IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN THE MATTER OF THE TAX COMPLIANCE OF<br><br>STE CONSTRUCTION SERVICE INC.<br>37140 POCAHONTAS<br>CLINTON TWP., MICHIGAN 48036 (OFFICE)<br><br>STE CONSTRUCTION SERVICE INC.<br>58391 MAIN STREET<br>NEW HAVEN, MICHIGAN (YARD) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case: 2:06-x-50846<br>      Assigned To: Cox, Sean F<br>      Filed: 09-07-2006 At 09:29 AM<br>      appl ste construction svc (le) |

### APPLICATION OF FUEL COMPLIANCE OFFICER
### TO ENTER SITE IN ORDER TO INSPECT FUEL

The United States of America, on the basis of the attached Declaration and Memorandum of Law, respectfully requests this court to enter an order authorizing Fuel Compliance Officer Andrea Pressley, and/or such other Fuel Compliance Officers as may be designated by the Internal Revenue Service, to enter the site at 58391 Main Street, New Haven, Michigan, and to enter any tank (storage and/or vehicle), reservoir, or other container that can or may be used for the storage or transportation of fuel and which is located on or within said site, for the purpose of taking and removing samples of such fuel to inspect the composition of the fuel pursuant to the authority of Section 7606 (Entry of Premises for Examination of Taxable Objects) and 4083(c) (Administrative Authority) of the Internal Revenue Code of 1986 as well as 26 C.F.R. 48.4083-1.

                                                Respectfully submitted,

                                                STEPHEN J. MURPHY
                                                United States Attorney

                                                */s/ Francis L. Zebot*
                                                FRANCIS L. ZEBOT
                                                Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN THE MATTER OF THE TAX COMPLIANCE OF | ) ) |
| STE CONSTRUCTION SERVICE INC.<br>37140 POCAHONTAS<br>CLINTON TWP., MICHIGAN 48036 (OFFICE) | ) ) ) ) |
| STE CONSTRUCTION SERVICE INC.<br>58391 MAIN STREET<br>NEW HAVEN, MICHIGAN (YARD) | ) ) ) |

Case: 2:06-x -50846
Assigned To: Cox, Sean F
Filed: 09-07-2006 At 09:29 AM
appl ste construction svc (le)

## MEMORANDUM OF LAW

A. **Introduction to The Statutory and Regulatory Regimen Concerning the Taxation of Diesel Fuel**

For many years the United States has imposed a tax upon fuels used in motor vehicles which travel upon the nation's streets, roads, and highways. 26 U.S.C. § 4081. The tax is not imposed upon fuel which is to be used for certain non-highway purposes, such as a furnace.

The problem of continuing and widespread tax evasion from the conversion of non-tax-paid fuel to taxable uses prompted Congress to enact provisions of the Internal Revenue Code that provide that fuel which is not to be used for a taxable purpose must be dyed.[1] In order to increase the likelihood of compliance with the dyed-fuel provisions and to encourage the

---

[1] A visible inert ingredient is mixed into fuel which is to be used for non-taxable purposes. Fuel on which the tax has been paid is clear and not dyed. The use of untaxed fuel in a taxable application is thus readily detectable by the presence of the dye. On a motor vehicle, the inspection is made by inserting a plastic device into the fuel tank and withdrawing a few milliliters of fuel. The fuel is examined visibly for the presence of red dye; it may be subjected to on-the-spot technical analysis; and may also be sent to a laboratory for further examination.

-1-

payment of tax when fuel is used for a taxable purpose, Congress provided for penalties to be imposed upon those who hold or use dyed fuel for a taxable purpose or who refuse to allow inspection of their fuel to determine whether the tax has been paid.

The successful enforcement of these Congressional provisions is dependent upon the Internal Revenue Service's ability to make certain that dyed diesel fuel is not being sold or used for a taxable use. This can only be done by the inspection of the fuel. Accordingly, Congress established a statutory regimen for an inspection program.

The Internal Revenue Service created the position of Fuel Compliance Officer (FCO) to enforce the statutory regimen for the taxation of diesel fuel. FCOs, who are designated to carry out the inspections, are credentialed revenue officers of the Internal Revenue Service. The FCOs inspect places where diesel fuel is located and stored, for example, fuel terminals, wholesale and retail fuel storage and sales facilities, and propulsion tanks of on-road vehicles. Dye Diesel Fuel Inspection Notice, Department of Treasury, Internal Revenue Service, Notice 916, was promulgated in December 1993, and serves as public notice of the program. The FCO is also required to give the notice to the person in charge of a facility prior to making any inspection, and then indicate that the FCO is going to make the inspection. If the person does not want to permit the inspection, that person is told that refusal to comply with the inspection can result in imposition of a $1,000.00 penalty.

**B.    26 U.S.C. § 4083**

It has long been held that things which are subject to a Congressionally-imposed tax or duty are of special and particular interest to the federal government, and the government has special rights with regard to them:

> [I]n the case of excisable or dutiable articles, the government has an interest in them for the payment of the duties thereon, and until such duties are paid, has a right to keep them under observation, or to pursue and drag them from concealment . . . .

*Boyd v. United States*, 116 U.S. 616, 624 (1886), quoted with approval in *Colonnade Corp. v. United States*, 397 U.S. 72, 76 (1970) (federal tax on whiskey); and in *United States v. Biswell*, 406 U.S. 311, 314 (1972) (firearms).

Pursuant to 26 U.S.C. § 4083(c)(1)(A), the United States has the right to enter any place at which taxable fuel is produced or is stored or may be stored for purposes of examining the equipment used to determine the amount or composition of such fuel and the equipment used to store such fuel and taking and removing samples of such fuel. The United States also has the right to detain, for the purposes set forth in Section 4083(c)(1)(A), any container which contains or may contain any taxable fuel. 26 U.S.C. § 4083(c)(1)(B).

A $1,000.00 penalty is imposed for any refusal to permit entry or other refusal to permit an action authorized by Section 4083(c)(1). 26 U.S.C. §§ 7342 and 4083(c)(3).

## C.     Writ of Entry Process

The subject of federal taxes, including remedies for their collection, has always been conceded to be the paramount right of the federal government. *United States v. Union Central Life Ins. Co.*, 368 U.S. 291, 338 (1961). Taxes are "the lifeblood of government, and their prompt and certain availability an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935).

The Supreme Court in *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 359-60 (1977), held that, although implementation of a tax levy did not require judicial intervention to be

effectuated, entry by the government onto a private premises to effect such a seizure required a warrant or consent under the Fourth Amendment. Herein, the FCO has requested consent to enter the premises, in the hope that consent would be provided. However, such consent was denied. Accordingly, the FCO is requesting a writ of entry in order to properly perform her official duties.

This Court's authority to issue a writ of entry is derived in part from the "All Writs Act," 28 U.S.C. § 1651, which provides in pertinent part as follows:

> (A) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

Additionally, the Court has jurisdiction to issue such writs as set forth in 26 U.S.C. § 7402, which provides that the Court has jurisdiction upon the government's application to issue a writ as necessary or appropriate for the enforcement of internal revenue laws. *See also*, 26 U.S.C. § 7606 (The Secretary is authorized to enter any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects). These statutes confer subject matter jurisdiction in the instant case for the Court to consider an application for writ to enter to inspect diesel fuel. Such a proceeding is normally *ex parte* and it has been held that the taxpayer is not a necessary party. *In re Carlson*, 580 F.2d 1365, 1382 (10th Cir. 1978) (mandamus action reversing district court's determination that it lacked jurisdiction to grant *ex parte* application of the government for a writ of entry to enforce internal revenue laws). *See also United States v. Shriver*, 645 F.2d 221, 222 (4th Cir. 1981) (reversing the district court and noting that "the warrant should have issued upon

the *ex parte* application of the United States on behalf of the Internal Revenue Service [and that] [t]he proceeding should not have been converted into an adversary one . . ."). In *United States v. Campbell*, 761 F.2d 1181, 1186 (6th Cir. 1985), the Sixth Circuit affirmed a finding of contempt for failure to yield and allow entry of IRS officers who had obtained an *ex parte* order to enter residence to seize taxpayer's property ("in a particular context similar to this case, it has also been recognized that the issuance of an order authorizing entry is to take place in a summary, *ex parte* proceeding," *citing Shriver*, 645 F.2d 221). Finally, in *United States v. Coppola, Jr.*, 99 F.3d 402 (table), 1995 WL 760573 (2nd Cir. 1995), the United States Court of Appeals for the Second Circuit rejected the taxpayers' challenge to the writ of entry because it was issued *ex parte*, stating that: "The law clearly establishes that in tax collection cases, the IRS can obtain writs of entry *ex parte*."

In the case of *In re Carlson*, 580 F.2d 1365 (10th Cir. 1978), the Court held that the probable cause standard for criminal search warrants is not the same standard to be applied when evaluating applications for writ of entry to effectuate collection. A challenge to a search warrant secured by the Bureau of Alcohol, Tobacco and Firearms was addressed in *United States v. Blanchard*, 495 F.2d 1329 (1st Cir. 1974). In *Blanchard*, the First Circuit recognized that the Fourth Amendment's requirements of reasonableness extended to inspection warrants, but found that it was "settled law that such warrants may issue despite the absence of probable cause to believe that a specific violation has occurred. Rather, where 'reasonable legislative or administrative standards,' have been satisfied, the limitations on inspection searches imposed by the Fourth Amendment will be deemed to have been complied with." *Blanchard*, 495 F.2d at 1331 (citations omitted). In *Blanchard*, the reasonableness standard could have been satisfied by

the allegation that the premises had not been inspected in the last twelve months.

Based upon the discussion in *Carlson* and the reasoning in *Blanchard,* the probable cause necessary for an inspection warrant does not require allegations sufficient to show that a specific violation has occurred; these cases allow obtaining an entry order on the same basis as the Supreme Court's rulings in the so-called *Camara-See* line of cases. *Camara v. Municipal Court*, 387 U.S. 523, 534 (1967) (administrative searches implicate the protections afforded under the Fourth Amendment but do not require probable causes to believe that a particular dwelling contains violations of the code being that a particular dwelling contains violations of the code being enforced); *See v. City of Seattle,* 387 U.S. 541 (1967) (same).

Just as the IRS must act within the confines of 26 U.S.C. §§ 6331 and 6334 in executing writs of entry to effectuate tax levies, the IRS must act within the confines of 26 U.S.C. §§ 4083 and the regulations thereunder in executing writs of entry to sample diesel fuel. FCO Pressley's Declaration demonstrates that the IRS has properly acted within the confines of 26 U.S.C. § 4083 and the regulations thereunder.

The FCO's Declaration establishes, even beyond reasonable cause, that there exists stored diesel fuel and vehicles at the site to be inspected and that such inspection is necessary to further the regulatory scheme for the taxation of diesel fuel.[2] Consistent with the right of the government to keep diesel fuel "under observation" (*Boyd,* 116 U.S. at 624; *Colonnade,* 397 U.S. at 76; *Biswell,* 406 U.S. at 314), one who indisputably carries or uses taxable articles must be prepared to incur reasonable and minimal disruption in the conduct of his/her trade or business to

---

[2] The presence of dyed fuel in the tank of a motor vehicle (or in a fuel storage tank used to fill such vehicles) is conclusive evidence of the improper use of non-tax-paid fuel. *See Hi-Way Dispatch, Inc. v. United States,* 858 F. Supp. 880, 883-84 (N.D. Ind. 1994).

allow for the examination of such articles. One who chooses to use a regulated article, such as diesel fuel, subject to a federal inspection program is "not left to wonder about the purposes of the inspector or the limits of his task." *Biswell, supra,* 406 U.S. at 316. Consistent with the nature of such fuel, it is clear and firmly established that the Commissioner of Internal Revenue has, by statute, been granted a "power of inquisition . . .[to] investigate merely on suspicion that the law is being violated, or even just because [she/he] wants assurance that it is not." *United States v. Morton Salt Co.,* 338 U.S. 632, 642-43 (1950) (dealing with the power of the Federal Trade Commission and cited with approval and by analogy in *United States v. Powell,* 379 U.S. 48, 57 (1964), a decision holding that the Commissioner of Internal Revenue need not show probable cause to obtain enforcement of an administrative summons issued under the Internal Revenue Code.

## CONCLUSION

Based upon the foregoing, along with the supporting Declaration of FCO Pressley, it is asserted that good cause exists for the issuance of an Order authorizing entry onto the business premises located at 58391 Main Street, New Haven, Michigan, for the purpose of inspecting any storage tank or container, including vehicle fuel tanks, reservoir or other container that can or may be used for the storage or transportation of fuel and which is located on or within such site, in order to take and remove samples of such fuel to inspect the composition of the fuel as allowed by law. As such, it is respectfully requested that the Court grant the United States'

Application of Fuel Compliance Officer to Enter Site in Order to Inspect Fuel and that the Court issue the proposed Order thereon.

                                  Respectfully submitted,

                                  STEPHEN J. MURPHY
                                United States Attorney

                                s/ Francis L. Zebot
                                FRANCIS L. ZEBOT
                                Assistant United States Attorney
                                211 W. Fort Street
                                Suite 2001
                                Detroit, MI 48226
                                (313) 226-9774
                                E-mail: francis.zebot@usdoj.gov
                                (P-22700)

Dated: 8/28/06

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

IN THE MATTER OF THE TAX )
COMPLIANCE OF )
 )
STE CONSTRUCTION SERVICE INC. )
37140 POCAHONTAS )
CLINTON TWP., MICHIGAN 48036 (OFFICE) )
 )
STE CONSTRUCTION SERVICE INC. )
58391 MAIN STREET )
NEW HAVEN, MICHIGAN (YARD) )

Case: 2:06-x-50846
Assigned To: Cox, Sean F
Filed: 09-07-2006 At 09:29 AM
appl ste construction svc (le)

DECLARATION OF FUEL COMPLIANCE OFFICER
ANDREA PRESSLEY OR HER DELEGATE

I, Fuel Compliance Officer Andrea Pressley, hereby declare and state:

1. I am a certified Fuel Compliance Officer, employed in the Group 6152, Territory Central, SB/SE, Internal Revenue Service, at 477 Michigan Ave., Room 2169, Excise Tax, Detroit, Michigan 48226.

2. As an FCO, I have the duty and administrative authority under the provisions of Section 4083 of the Internal Revenue Code of 1986 to enter any place at which taxable fuel is produced and/or stored for purposes of examining the equipment used to determine the amount or composition of such fuel and the equipment used to store such fuel and to take and remove samples of such fuel and detain for said purposes any container which contains or may contain any taxable fuel.

3. STE Construction Service Inc. is engaged in construction and uses diesel fuel in the operation of its business. STE Construction Service Inc. stores its trucks and/or related construction equipment and its fuel tanks on the premises at 58391 Main Street, New Haven, Michigan.

4. On June 30, 2006, I conducted a fuel inspection on an STE Construction Service Inc. truck on Hall Road, a temporary check point. The location was on Hall Road past Card Road in Clinton Twp., Michigan 48036. An STE Construction Service Inc. diesel truck was pulled over for county violation. Deputy Ambrose of the Macomb Sheriff's Department called a Fuel Compliance Officer for the possibility of dyed diesel in the truck's saddle tank. I identified myself as a Fuel Compliance Officer to Robert Richter, the driver of the STE Construction Service Inc. truck, and gave him a copy of Notice 916, Taxable Fuel Inspection Notice (copy attached). Robert Richter gave me permission to inspect the tanks, and evidence of dyed fuel was found in the vehicle propulsion tank.

5. During the June 30, 2006, inspection at the temporary site, Robert Richter represented to me that the dye was an additive that turns the diesel fuel red and all the trucks have this additive. The company does have two storage tanks that hold dyed and taxable diesel fuel. The storage tanks are located in the yard which is different from the office site. The location is in a old foundry with an address of 58391 Main Street, New Haven, Michigan. Since I had found dyed fuel violation during the June 30, 2006, inspection, a follow-up inspection of the STE Construction Service Inc. yard in New Haven, Michigan, was undertaken.

6. A couple of hours later on June 30, 2006, I arrived at the STE Constructive Service Inc., 58391 Main Street, New Haven, Michigan, yard with the driver of the company, Robert Richter. FCO had the driver call the owner, his sister, Catherine Richter, to come out to the yard to do a follow-up dyed diesel inspection. As the driver unlocked the gate to the yard, FCO followed behind him. FCO was going to get a sample out of the truck which had current plates, but first wanted to get a sample of this additive that turns taxable diesel fuel to red diesel and the correct name and the components of the additive. FCO and the driver, Robert Richter, went back out from the garage to the yard and were talking about how the trucks were old with low mileage. A man came up fussing about what right did the FCO have to be on his property and get samples of the diesel and additive. FCO tried to show the man her credentials and to give him a Notice 916, but he refused to accept or even look at them. The man stated he was Frank Richter, Vice President of the company and the owner (his sister) gave him authorization to handle this inspection. After a short conversation about the previous penalty and who would take responsibility, Frank Richter stated "the company."

7. On June 30, 2006, Frank Richter refused to allow my entry to inspect STE Construction Service Inc. storage tanks and the current plated diesel truck at 58391 Main Street, New Haven, Michigan. FCO left the yard.

8. My attempt to conduct an inspection at the STE Construction Service Inc. yard at 58391 Main Street, New Haven, Michigan, was made pursuant to IRC Sec. 7606 (Entry of Premises for Examination of Taxable Objects) and IRC Sec. 4083(c), (Administrative Authority).

9. I have knowledge of the storage of diesel fuel on the premises by personal observation made on June 30, 2006.

10. An inspection under IRC Sec. 4083(c)(1) has never been performed at this site, although violations for vehicles operated by STE Construction Service Inc. were discovered at an inspection undertaken on June 30, 2006 on Hall Road, and as detailed above.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

*Andrea Pressley*

Andrea Pressley, Fuel Compliance Officer, 477 Michigan, Rm 2169, Detroit, MI. 48226

8/7/06
Date

Executed On

*Jocelyn C Davis*

JOCELYN C DAVIS
Notary Public - Michigan
Oakland County
My Commission Expires Jun 4, 2011
Acting in the County of OAKLAND



Department of the Treasury
Internal Revenue Service

www.irs.gov

Notice 916 (ENG/SP) (8-2004)
Catalog Number 38988H

### Taxable Fuel Inspection Notice

Internal Revenue Code section 4083(c) authorizes officials of the Internal Revenue Service to inspect, examine, or search:

- equipment used or capable of being used for the production, storage, or transportation of fuel, fuel dyes, or fuel markers;
- equipment used to determine the amount or composition of taxable fuel;
- equipment used for the dyeing or marking of fuel;
- containers used or capable of being used for the production, storage, or transportation of fuel, fuel dyes, or fuel markers; and
- books and records kept to determine excise tax liability under Internal Revenue Code section 4081.

Officials may detain any vehicle or train to inspect its fuel propulsion tanks.

Officials may detain any vehicle, train, or marine transport vessel to inspect its fuel cargo storage tanks.

Officials may take and remove samples of fuel to determine the composition of the fuel.

The Internal Revenue Service may fine any person who doesn't allow an authorized inspection. The fine is $1,000 for each refusal. The fine is in addition to the manufacturer's tax on taxable fuel and the penalty for the misuse of dyed fuel.

### Aviso De Inspección De Combustible Sujeto A Impuestos

El Código de Rentas Internas sección 4083(c) autoriza a los oficiales del Servicio de Impuestos Internos a inspeccionar, examinar, o a la búsqueda de:

- Los equipos que usaron o fueron capaz de usarse para la producción, almacenamiento, o transporte de combustible, tintes de combustible, o marcadores de combustible;

- Los equipos que usaron para determinar la cantidad o los componentes de combustible sujeto a impuestos;

- Los equipos usados para dar el tinte o marcar el combustible;

- Los envases que se usaron o fueron capaz de usarse para la producción, almacenamiento, o el transporte de combustible, tintes de combustible, o los marcadores de combustible; y

- Los libros y la documentación mantenida para determinar la obligación del impuesto sobre artículos de uso y consumo bajo el Código de Rentas Internas sección 4081.

Los oficiales pueden detener cualquier vehículo o tren para inspeccionar sus tanques de combustible de propulsión.

Los oficiales pueden detener cualquier vehículo, tren, o embarcación de transporte marino para inspeccionar los tanques de almacenamiento de la carga de combustible.

Los oficiales pueden tomar y remover muestras de combustibles para determinar la composición del combustible.

El Servicio de Impuestos Internos puede multar a cualquiera persona que no permite una inspección autorizada. La multa es $1,000 por cada inspección rechaza. La multa es en adicción del impuesto del fabricante sobre el combustible sujeto a impuestos y por el mal uso del combustible teñido.